UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EUGENIO ROJAS VELEZ,
on behalf of himself, FLSA Collective Plaintiffs
and the Class,

Plaintiff,

- against -

111 ATLAS RESTAURANT CORP., BILL
ATHANASOPOULOS, JOHN
ATHANASOPOULOS, VASILIOS
ATHANASOPOULOS, and STRAVOS
MOUTOPOULOS,

Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

14 CV 6956 (MKB) (CLP)

**POLLAK**, United States Magistrate Judge:

On November 26, 2014, plaintiff Eugenio Rojas Velez ("Velez") commenced this class

and collective action on behalf of himself and all other similarly situated non-exempt employees

of defendants 111 Atlas Restaurant Corp. ("Atlas"), Bill Athanasopoulos, John Athanasopoulos,

Vasilio Athanasopoulos, and Stravos Moutopoulos (the "individual defendants")[1], seeking

unpaid minimum and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

201 et seq., and the New York Labor Law ("NYLL"), unpaid regular and overtime compensation

for off-the-clock work, in violation of the FLSA and NYLL, spread of hours violations under the

NYLL, and other claims under the NYLL. (Compl.[2] ¶¶ 1-2). Three opt-in plaintiffs, Ernesto

Acevedo, Miguel Romero, and Patricia Alacqua (collectively, "plaintiffs"), have joined the

---

[1]Although plaintiffs are moving for summary judgment against all defendants, as to the
individual defendants, it appears that plaintiffs are only requesting that 111 Atlas Restaurant
Corp., John Athanasopoulos, and Stravos Moutopoulos be held jointly and severally liable.

[2]Citations to "Compl." refer to plaintiffs' Complaint, filed November 26, 2014.

1

action.

Presently before this Court are plaintiffs'[3] motions for: (1) summary judgment on all claims; and (2) class certification, pursuant to Federal Rule of Civil Procedure 23, as to the claims brought under the New York State wage and hour laws.[4]

For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion for summary judgment be granted and that plaintiffs' motion for class certification be granted in their entirety.

## FACTUAL BACKGROUND

For the past six years, defendants have operated a restaurant at 111-16 Atlantic Avenue, Richmond Hill, N.Y. under the name "Atlantic Diner." (Pls.' 56.1 Stmnt[5] ¶ 1; Compl. ¶¶ 6, 24; Defs.' 56.1 Stmnt[6] ¶ 1). The diner was closed for renovations in 2010 and reopened in 2011. (Pls.' 56.1 Stmnt ¶ 1; Defs.' Int. Resp.[7] 2; Defs.' 56.1 Stmnt ¶ 1). During the class period,

---

[3]While plaintiff Velez originally filed this action on behalf of the class, the motion papers refer to all plaintiffs. Therefore, the Court refers to the arguments and papers submitted in connection with the motion for summary judgment and for class certification on behalf of all opt-in plaintiffs.

[4]Although plaintiffs' motion for class certification under Fed. R. Civ. P. 23 was filed prior to the filing of the motion for summary judgment, the Court has addressed the motion for summary judgment first because an understanding of the facts and the legal issues underlying the plaintiffs' claims is necessary to determine whether a class should be certified under Rule 23.

[5]Citations to "Pls.' 56.1 Stmnt" refer to Plaintiffs' Local Rules [sic] 56.1 Statement of Material Facts, dated January 8, 2016, and filed in support of plaintiffs' Motion for Summary Judgment.

[6]Citations to "Defs.' 56.1 Stmnt" refer to Defendants' Local Rule 56.1 Counter-Statement of Material Facts, dated February 29, 2016, and filed in support of defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, dated January 29, 2016.

[7]Citations to "Defs.' Int. Resp." refer to Defendants' Responses to Interrogatories, attached as Exhibit 10 to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for

plaintiffs and the other Class Members were employed by defendant Atlas Restaurant Corp., the corporate entity doing business as the Atlantic Diner. (Pls.' 56.1 Stmnt ¶ 2; Defs.' 56.1 Stmnt ¶ 2).

Plaintiffs assert that defendants John Athanapolous and Stavros Moutopoulos were each 22-24% owners and managers of Atlantic Diner, with the power to hire and fire employees. (Pls.' 56.1 Stmnt ¶¶ 3-4). As to defendant John Athanapolous, he determined the employees' compensation, controlled the employees' schedules and conditions of employment, and was in charge of payroll and maintained the payroll records. (Id. ¶ 3). As to defendant Stavros Moutopoulos, he had the power to hire and fire employees; however, while plaintiffs allege that he also had the power to determine employees' compensation, controlled employees' schedule and condition of employment, defendants dispute this allegation. (See id. ¶ 4; cf. Defs.' 56.1 Stmnt ¶ 4). Rather, defendants contend that Stavros Moutopoulos had the power to "give people a shift if he wanted to." (Defs.' 56.1 Stmnt ¶ 4).

Plaintiffs allege that plaintiff Velez was employed as a busser beginning in November 2008, and continued until the diner closed for renovations in 2010; he resumed employment at the diner when it re-opened in 2011 and continued working there until August 2014. (Pls.' 56.1 Stmnt ¶ 5).[8] According to Plaintiffs' 56.1 Statement, Velez was a tipped employee throughout the time of his employment at Atlantic Diner, working approximately 60 hours per week. (Id. ¶

Summary Judgment Pursuant to Fed. R. Civ. P. 56, dated January 8, 2016 ("Pls.' SJ Mem.").

[8]It should be noted that the time period alleged to have been worked by plaintiff Velez in the Plaintiffs' 56.1 Statement differs from what plaintiff Velez claimed in connection with the earlier motion for certification of a collective action. (Compare Pls.' 56.1 Stmnt with Declaration of Eugenio Rojas Velez, filed on December 24, 2015 ("Velez Decl. 1") ¶ 1).

6; see also Velez Decl. 1 ¶¶ 2, 3).  Plaintiffs allege that during his employment, Velez was paid

$5.00 per hour, which was at all times below the minimum wage, and that he never received

proper tip credit notice.  (Pls.' 56.1 Stmnt ¶¶ 7, 8; cf. Defs.' 56.1 Stmnt ¶ 7(b) (contending that

defendants did not pay below the minimum wage because they provided the proper tip credit

notification)).[9]  According to plaintiff Velez, he never received a tip credit notice in writing or

orally, informing him that defendants were taking a tip credit toward his minimum wage.  (Pls.'

56.1 Stmnt ¶ 8).  He also claims that he was never told that he was entitled to retain all of the tips

he received or that defendants were required to pay extra if the tips were not sufficient to bring

his wages up to the minimum hourly rate.  (Id.)  Defendants dispute that plaintiffs never received

a tip credit notice, arguing that defendants notified employees of the tip credit by "providing

written notification by prominently displaying a poster in the workplace," and "by explaining to

employees the use of tip credit while documenting the tips earned by employees on the tip 'sign

off' sheet that enumerates the tips employees earned for the pay period."  (Defs.' 56.1 Stmnt ¶ 8).

Plaintiff Ernesto Acevedo worked as a busser and tipped employee at the Atlantic Diner

from June 2009 until April 2010, receiving $5.00 per hour, at all times below the minimum

wage.  (Pls.' 56.1 Stmnt ¶¶ 10, 11).  He worked approximately 56 hours per week, and was never

given proper tip credit notice, either orally or in writing.  (Id. ¶¶ 10, 12).  Again, defendants do

---

[9]This assertion also differs from the claims made by Velez in the motion for conditional certification.  (See Velez Decl. 1 ¶ 4).  Specifically, in his earlier Declaration, Velez claimed that during his employment with defendants, he was paid a fixed salary regardless of the hours worked, and that:  1) from 2005 until January 2013, he was paid at the rate of $3.22 per hour and 2) from January 2013 until August 28, 2014, he was paid at the rate of $3.64 per hour.  (Id. ¶ 5).  In Velez's earlier Declaration, he also claimed that from 2005 until January 2013, he was paid a fixed weekly salary of $190 per week and that from January 2013 until August 28, 2014, he was paid at the rate of  $215 per week.  (Id. ¶¶ 4-5).  Although the Court notes these discrepancies, as discussed infra at note 15, they are not sufficient to raise a genuine issue of material fact.

not dispute that Acevedo worked at Atlantic Diner and received $5.00 per hour, but they contend

that he received notice of the "tip credit," and thus was paid properly under the tip credit

minimum wage. (Defs.' 56.1 Stmnt ¶¶ 11, 12).

Plaintiff Miguel Romero worked as a server at the Atlantic Diner for approximately 5

months in 2013, being paid $5.00 per hour, at all times below the minimum wage. (Pls.' 56.1

Stmnt ¶¶ 13, 14). Although he was a tipped employee, Romero never received proper tip credit

notice, either orally or in writing. (Id. ¶¶ 14, 15). Defendants do not dispute that Romero

worked at Atlantic Diner and received $5.00 per hour, but they contend that he received notice of

the "tip credit," and thus, was paid properly under the tip credit minimum wage. (Defs.' 56.1

Stmnt ¶¶ 14, 15).

Plaintiff Patricia Alacqua also worked as a server at Atlantic Diner from March 2013

until September 2013. (Pls.' 56.1 Stmnt ¶ 16). She was a tipped employee, receiving $5.00 per

hour, at all times below the minimum wage, and never receiving proper tip credit notice. (Id. ¶¶

17, 18). Similarly, defendants do not dispute that Alacqua worked at Atlantic Diner and received

$5.00 per hour, but they contend that she received notice of the "tip credit," and thus, was paid

properly under the tip credit minimum wage. (Defs.' 56.1 Stmnt ¶¶ 17, 18).

According to plaintiffs, other tipped employees, including waiters, bussers, and delivery

people were paid at hourly rates below the minimum wage[10] and never given proper tip credit

notice. (Pls.' 56.1 Stmnt ¶¶ 19, 20; cf. Defs.' 56.1 Stmnt ¶¶ 19, 20 (conceding the hourly rates

paid to tipped employees but disputing that the tip credit notice as improper)). Plaintiffs cite to

---

[10]Bussers and waiters were paid at the rate of $5.00 per hour and delivery people received
a wage of $6.00 per hour. (Id. ¶ 19).

the deposition testimony of John Athanasopoulos in asserting that although employees used punch cards to clock in and out, it was defendants' policy and practice to "round down" to the nearest whole hour. (Id. ¶ 21 (citing J. Athanasopoulos Dep.[11] at 44, 45); see also Pls.' Exs. 3, 6). Plaintiffs contend that this practice "systematically undercompensated Plaintiffs and the Class." (Pls.' 56.1 Stmnt ¶ 21). For example, according to plaintiff Alacqua's punch cards for October 9, 2013, she punched in at 1:48 and punched out at 8:56, working for 7 hours and 8 minutes; however, next to these two times, there is a handwritten "7." (See Pls.' Ex. 7).[12] Plaintiffs argue that it was defendants' policy to round down the total amount of time worked by plaintiff to the nearest whole hour. (Pls.' SJ Mem. at 12). Therefore, in this example, plaintiffs allege that for October 9, plaintiff Alacqua was only paid for 7 hours of work, when she really worked for 7 hours and 8 minutes.

In response, defendants argue that their "policy of requiring employees to round down actually favors employees, e.g., employees get paid for time they did not work." (Defs.' 56.1 Stmnt ¶ 21). For example, defendants contend that "if an employee begins his or her shift at 9:15 p.m., he or she is required to record '9 p.m.' on the time sheet. Thus, if said employee worked [from] 9:15 p.m. to 6 a.m., he or she is paid the entire 9 hours." (Id.)

According to the Plaintiffs' 56.1 Statement, defendants began using a payroll company,

---

[11]Citations to "J. Athanasopoulos Dep." refer to the deposition of John Athanasopoulos, dated November 30, 2015, attached as Ex. 1 to Pls.' SJ Mem.

[12]Notwithstanding the timecard indicating that plaintiff Alacqua worked during the week of October 6, 2013 (see Pls.' Ex. 7), plaintiffs allege that she only worked as a server for defendants from March through September 2013. (Pls.' 56.1 Stmnt ¶ 16). Defendants, however, do not dispute this fact for the purposes of this motion. (Defs.' 56.1 Stmnt ¶ 16).

ABP, in January 2013. (Pls.' 56.1 Stmnt ¶ 22). Prior to that time, all employees were paid in cash and they were not provided with paystubs listing rate of pay, hours worked, withholdings and deductions as required by the NYLL. (Id.) Even after defendants began using ABP, plaintiffs claim that certain employees were still paid off-the-books and in cash. (Id. ¶ 23). In response, defendants contend that records prior to 2012 were lost due to the restaurant renovation. (Defs.' 56.1 Stmnt ¶ 22 (citing J. Athanasopoulos Dep. at 20)).

Although defendants began providing paystubs in 2013, plaintiffs claim that they did not accurately reflect the hours worked because of defendants' policy of rounding the hours down to the nearest whole hour. (Pls.' 56.1 Stmnt ¶¶ 23, 24; cf. Defs.' 56.1 Stmnt ¶¶ 23, 24 (stating that because of the rounding policy, defendants compensated plaintiffs for more than the actual hours worked)). The paystubs also failed to reflect the amount of tip credit taken by defendants and did not inform plaintiffs of the defendants' practice of taking tip credit. (Pls.' 56.1 Stmnt ¶ 24). Again, defendants claim that they "verbally inform[ed] employees of taking a tip credit against employees' wages" and informed employees of the tip credit through a poster display. (Defs.' 56.1 Stmnt ¶ 24(c)).

Plaintiffs also claim that prior to January 2013, defendants did not provide annual wage notices to their employees and even after that date, they failed to provide wage notices on the date of hire. (Pls.' 56.1 Stmnt ¶¶ 25, 26; cf. Defs.' 56.1 Stmnt ¶ 25(b) (stating that defendants gave employees verbal notice of the required information)). Finally, plaintiffs claim that defendants failed to provide spread of hours premium pay whenever plaintiffs' workday exceeded 10 hours per day. (Id. ¶ 27). Defendants also dispute that they failed to pay spread of

hours, contending that they paid spread of hours compensation when employees worked overtime. (Defs.' 56.1 Stmnt ¶ 27 (citing J. Athanasopoulos Dep. at 78)).

## PROCEDURAL HISTORY

On March 3, 2015, plaintiff Velez filed a motion for conditional certification of a collective action under the FLSA, 29 U.S.C. § 216(b). On May 27, 2015, this Court granted collective certification for "all non-exempt employees employed by defendants, including waiters, bussers, runners, bartenders, baristas, delivery persons, cooks, line cooks, dishwashers, food preparers, hosts, and cashiers" during the period extending back six years prior to the date of the Order, from May 27, 2009 through May 27, 2015.[13] (Order at 12). After notices were sent, three opt-in plaintiffs, Ernesto Acevedo, Miguel Romero, and Patricia Alacqua, filed consents to join the action. (Docket Entries 39, 40, 41).

On December 24, 2015, plaintiffs moved for class certification pursuant to Federal Rule of Civil Procedure 23 on behalf of: 1) a class of all non-exempt employees employed during the past six years by Atlantic Diner; and 2) a subclass of all tipped employees employed during the past six years for minimum wage claims (the "Tipped Subclass"). (Pls.' Cert. Mem.[14] at 1). Thereafter, on January 8, 2016, plaintiffs moved for summary judgment, contending that: 1)

---

[13]This Court found that because plaintiffs' claims included claims under both the NYLL and the FLSA, and given the minimal additional burden imposed on defendants to provide the notice, it was "appropriate to send the notice to all potential class members extending back six years prior to the filing of this Order." (Order, dated May 27, 2015 ("Order"), at 13). Therefore, the Court analyzes plaintiffs' claims only insofar as they pertain to this time period.

[14]Citations to "Pls.' Cert. Mem." refer to plaintiffs' Memorandum of Law in support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23, dated December 24, 2015.

defendants paid the plaintiffs and the Tipped Subclass below the prevailing minimum wage
under both the FLSA and NYLL; 2) defendants failed to satisfy the requirements for claiming a
valid tip credit allowance; 3) defendants failed to pay plaintiffs and the Class Members for all
hours worked due to their policy of rounding down the number of hours worked to the nearest
whole number; and 4) defendants failed to pay spread of hours wages for hours worked more
than ten hours per day.  (Pls.' SJ Mem. at 2-3).  Plaintiffs also argue that summary judgment
should be granted on their claim of willfulness and that the evidence demonstrates that both John
Athanasopoulos and Stravos Moutopoulos should be held jointly and severally liable as
employers.  (Id. at 3).

     For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for
class certification be granted, and that plaintiffs' motion for summary judgment be granted.

DISCUSSION

I.  Motion for Summary Judgment

     A.  Standards

     It is well-settled that a party moving for summary judgment has the burden of establishing
that no genuine issue of material fact is in dispute and that the moving party is therefore entitled to
judgment as a matter of law.  See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 256 (1986); New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114
(2d Cir. 2010).  Since summary judgment is an extreme remedy, cutting off the rights of the non-
moving party to present their case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535
F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y.

9

1985) (stating that "[s]ummary judgment is a drastic remedy and should be applied sparingly"), the Court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial." Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)) (alteration in original), aff'd, 732 F.2d 142 (2d Cir. 1984). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original).

Once the moving party discharges its burden of proof, the party opposing summary judgment has the burden of setting forth "specific facts showing that there is a genuine issue for trial,' wherein 'a reasonable jury could return a verdict for the non-moving party." International Bus. Machs. Corp. v. BGC Partners, Inc., No. 10 CV 128, 2013 WL 1775367, at *4 (S.D.N.Y. Apr. 25, 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (internal quotation marks and citations omitted). Despite the fact that "allegations of the party defending against the summary judgment motion" must be accepted as true, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citations omitted). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171 (2d Cir. 2011), cert.

10

denied, 132 S. Ct. 2439 (2012).

Federal Rule of Civil Procedure 56 provides that, in moving for summary judgment or responding to such a motion, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Rule 56's "requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" Patterson v. County of Oneida, New York, 375 F.3d 206, 219 (2d Cir. 2004) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988)). While the Court need consider only the materials cited by the parties, it may consider any other materials in the record in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).

B. Minimum Wage Claims Under The FLSA

Under the FLSA, employers are required to compensate covered employees for all work performed, including overtime, in order to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §§ 202(a), 207(a)(1); see also Reich v. New York City Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995) (citations omitted). The FLSA requires employers to

11

pay the prevailing minimum wage, 29 U.S.C. § 206(a)(1), and, pursuant to Section 216(b) of the

FLSA, an employee may bring an action to recover unpaid minimum wages, overtime, and

liquidated damages if the employer violates the Act.  See Gjurovich v. Emmanuel's Marketplace,

Inc., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting Hoffman v. Sbarro, Inc., 982 F. Supp.

249, 260 (S.D.N.Y. 1997)).

 An employee bringing an action for unpaid minimum wages under the FLSA has the

burden of proving that he performed work for which he was not properly compensated.  Fermin

v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 41 (quoting Pineda v. Masonry Const.,

Inc., 831 F. Supp. 2d at 674).  However, if the employee ordinarily receives customer tips in the

course of their employment, the employer may take a tip credit, but only so long as the employer

complies with certain prerequisites.  29 U.S.C. § 203(m).  Section 203(m) provides that:

> In determining the wage an employer is required to pay a tipped employee, the
> amount paid such employee by the employee's employer shall be an amount
> equal to–
>
> > (1) the cash wage paid such employee which for purposes of such
> > determination shall be not less than the cash wage required to be paid
> > such an employee on August 20, 1996; and
> >
> > (2) an additional amount on account of the tips received by such
> > employee which amount is equal to the difference between the wage
> > specified in paragraph (1) and the wage in effect under section 206(a)(1)
> > of this title.

The additional amount on account of tips may not exceed the value of the tips actually received

by an employee.

 To be eligible for the tip credit set forth in Section 203(m), the employer bears the burden

of showing that it has satisfied two conditions: (1) informing the employee of the "tip credit"

provision of the FLSA; and (2) permitting the employee to retain all of the tips the employee

receives to qualify for the tip credit.  See Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d

at 287 (collecting cases).  "This notice provision is strictly construed and normally requires that

an employer take affirmative steps to inform affected employees of the employer's intent to claim

the tip credit."  Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497-98 (S.D.N.Y.

2015) (quoting Perez v. Lorraine Enters., Inc., 769 F.3d 23, 27 (1st Cir. 2014)).  Indeed, the

statute expressly provides that an employer is ineligible for a tip credit allowance "unless such

employee has been informed by the employer of the provisions of this subsection, and all tips

received by such employee have been retained by the employee."  29 U.S.C. § 203(m).

Courts have interpreted the notice requirement to require the employer to show "that [it]

satisfied the FLSA's notice requirement by, for example, providing employees with a copy of §

203(m) and informing them that their tips will be used as a credit against the minimum wage as

permitted by law."  He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *5

(S.D.N.Y. Aug. 13, 2014) (internal quotation marks omitted); see also Inclan v. New York Hosp.

Grp., Inc., 95 F. Supp. 3d at 497 (quoting Reich v. Chez Robert, Inc., 28 F. 3d 401, 403 (3d Cir.

1994)) (holding that "[i]f the employer cannot show that it has informed employees that tips are

being credited against their wages, then no tip credit can be taken and the employer is liable for

the full minimum-wage. . . ").

The employer bears the burden of demonstrating that it complied with the FLSA's notice

of tip credit requirement.  Inclan v. N.Y. Hosp. Grp, Inc., 95 F. Supp. 3d at 497.  If the employer

cannot show that it informed its employees that tips were being credited against their minimum

wages, then the employer may not take a tip credit and is liable for the full minimum wages

13

owed. Id.

Plaintiffs argue that here it is undisputed that the tipped employees at Atlantic Diner were not paid full minimum wages, but were compensated well below the applicable minimum wage. (Pls.' SJ Mem. at 6). Plaintiffs point to the testimony of John Athanasopoulos that plaintiff Velez was paid $5.00 an hour for the entire time he worked for defendants.[15] (Id. (citing J. Athanasopoulos Dep. at 84)). Athanasopoulos also testified that all servers and bussers were paid at the rate of $5.00 an hour and delivery personnel were paid at the rate of $6.00 per hour. (Id. at 6-7 (citing J. Athanasopoulos Dep. at 32-33)). Defendants' payroll records confirm that these were the rates paid. (See Ex. 3).

Defendants do not appear to dispute the fact that the tipped employees were not paid full minimum wages. (Defs.' 56.1 Stmnt ¶¶ 7(a), 11(a), 14(a), 17(a), 19(a)). Instead, their argument is that they were entitled to pay tipped minimum wages because they gave the proper notice required by the FLSA. (Id. ¶¶ 7(b), 8, 11(b), 12, 14(b), 15, 17(b), 18, 19(b), 20; see also Defs.' SJ Opp.[16] at 4-7). Noting that the Department of Labor authorizes employers to give tip credit notice under the FLSA either orally or in writing, defendants contend that they gave plaintiffs

---

[15]Although plaintiffs argue that Athanasopoulos testified that plaintiff Velez was paid $5.00 an hour for the entire time he worked for defendants, Velez's earlier Declaration claims that during his employment with defendants, he was paid a rate of $3.22 per hour from 2005 until January 2013, and a rate of $3.64 per hour from January 2013 until August 28, 2014. (See supra note 9). However, the Court need not determine what amount plaintiff Velez was actually paid at this time. Rather, the question before the Court on this motion is to determine if there is a material issue of fact as to whether defendants provided the "tip credit notice" to all plaintiffs. Therefore, regardless of whether plaintiff Velez was paid $3.22 per hour or $5.00 per hour, both rates are under the statutory minimum wage if the tip credit cannot be claimed by defendants.

[16]Citations to "Defs.' SJ Opp." refer to defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, dated January 15, 2016.

both verbal and written notice that they were using a tip credit against the minimum wage. (Defs.' 56.1 Stmnt ¶ 24(c); Defs.' SJ Opp. at 5). Specifically, defendants claim that they "prominently displayed the poster containing information required by the FLSA in the workplace for the past six years." (Defs.' 56.1 Stmnt ¶¶ 8, 12, 15, 18, 19(b), 20; Defs.' SJ Opp. at 5).

In support, defendants provided affidavits from several employees who are currently employed by defendants and who have worked for defendants for years. (Defs.' SJ Opp. at 5 (citing Ex. 1, 2)). According to these employee affidavits, they have seen the poster displayed in the workplace and have known of the use of the tip credit. (Id.) While acknowledging that some courts have held that a generic government poster may not sufficiently advise employees that the employer intended to take a tip credit, see, e.g., Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d at 289, defendants contend that "in this case, the posters posted by Defendants' [sic] that inform employees of FLSA requirements in conjunction with defendants maintaining records of the tip sign off sheets" that the employees were required to sign. (Defs.' SJ Opp. at 5). The tip sign off sheets contain the hourly rate of pay, the dollar amount of tips received during any pay period, the amount of overtime worked and the amount of hours worked. (Id. at 5). Defendants argue that these sheets provided adequate notice of the tip credit because the amount of tips notified plaintiffs of the tips that defendants would take against their wages. (Id. at 6).

In response to defendants' argument that they posted a tip credit notice in the form of a poster in the workplace, plaintiffs assert that prior to the close of discovery, defendants never provided any evidence regarding such a poster "whatsoever." (Pls.' SJ Reply[17] at 2). Plaintiffs

_____

[17]Citations to "Pls.' SJ Reply" refer to Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, dated February 12,

point out that John Athanasopoulos, who is responsible for the wage and hour policies at Atlantic Diner (see Pls.' SJ Reply at 2 (citing J. Athanasopoulos Dep. at 19)), never mentioned a poster even though he was asked several times whether he provided tip credit notice. (Id.) According to Athanasopoulos, the only notice he provided to employees was the Wage Theft Prevention Act ("WTPA") notices, which he began to provide after January 2013. (Pls.' SJ Mem. at 8). However, as plaintiffs point out, the WTPA notices do not explain the tip credit nor do they inform plaintiffs that defendants were taking a tip credit as part of the employees' minimum wage. (See id. at 8-9; Ex. 4). Specifically, under Section 4 of the WTPA notices, which is titled "Allowances Taken," the "tips __ per hour" box and space have not been filled in by defendants. (Id.)

As for the poster that was allegedly hung in the diner, plaintiffs argue that there is no evidence as to what the poster actually said and whether it actually informed the employees in accordance with the requirements of the FLSA. (Pls.' SJ Reply at 2-3). Defendants have not provided a copy of the poster, nor have they provided any photographs indicating what the content of the poster was. (Id.) As plaintiffs point out, the only evidence that such a poster existed is the four affidavits from other employees which plaintiffs urge the Court to disregard because they were submitted for the "sole purpose of creating issues of fact when none exists and contain numerous statements contradicting Defendant Athanasopoulos' sworn testimony." (Id. at 1). Indeed, plaintiffs note that during the course of discovery, defendants never disclosed these other employees as potential witnesses. (Id. at 7). Thus, plaintiffs were never given an

_____

2016.

opportunity to depose the witnesses as to the content of the alleged posters prior to their submission of these affidavits.

Even if the Court were to consider the submissions from these current employees (see discussion supra at 11), the statements do not provide any information as to what the posters said, apart from a verbatim recitation of FLSA requirements, and fail to indicate where in the diner the posters could be found. (See Defs.' SJ Opp., Ex. 2). Courts have consistently held that a posting in the workplace is insufficient to satisfy the tip credit notice requirement, particularly where there is no testimony or photograph to demonstrate the poster's content or source. See, e.g., He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014); Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d at 289. In the absence of any information about the content of these alleged posters, there is no way to determine if the alleged posters provided the employees with adequate notice of the tip credit allowance.

Similarly, the fact that defendants provided tip sign off sheets to the employees does not help the defendants' argument. Not only do the tip credit sign off sheets provided in connection with the motion for summary judgment fail to contain the information claimed by defendants to be on the sheets – namely, the hourly rate of pay and the dollar amount of tips – but it is unclear why these sheets provided any notice that the defendants were taking tips into account when calculating minimum wage. (See Defs.' SJ Opp., Ex. 4, at 1). While the sheets state the amount of tips received, they do not inform the employee of the amount taken by the employer as a tip credit.

Finally, there is no evidence in the record to suggest that John Athanasopoulos orally

17

advised the employees of the tip credit law. The adequacy of any oral notice defendants provided

to their employees under the FLSA is a question of fact more properly reserved for the jury.

Some courts have held that defendants may introduce evidence to show that they complied with

the oral notice requirements, and thus, are eligible to take the tip credit under the FLSA. Here,

although the employees' affidavits all state in virtually identical language that they were

informed of the tip credit, Mr. Athanasopoulos, when questioned during his deposition, could not

explain what information about the tip credit allowance was provided to employees. (Pls.' SJ

Mem. at 7-8). After several failed attempts to explain what the tip credit was, Mr.

Athanasopoulos was asked: "How would you define what a tip credit is? If you don't know, you

can just tell me you don't know." (Defs.' SJ Opp. at 6 (quoting J. Athanasopoulos Dep. 33-35)).

His response was "I don't know." (Id.) Defendants now contend that he did not understand the

question. (See id. at 6). However, he never said he did not understand; to the contrary, he stated

that he did not know. (Id.) Despite defendants' efforts to alter the clear meaning of his

testimony, the testimony speaks for itself. He tried several times to explain the tip credit but was

unable to do so.[18]

Thus, although defendants argue that there is a genuine issue of material fact in dispute as

to whether defendants provided adequate notice to satisfy the tip credit requirement under the

FLSA, this Court can find no basis on which a jury could find that adequate notice was given.

---

[18]At first, he stated that "[a] tip credit is I think when you work over 40 hours, how much tips you're supposed to make after a certain amount. . . ." (Defs.' SJ Opp. at 6; Pls.' Mem., Ex. 1, Dep. 34:9-11). Then he responded to the question of what he would tell an employee if asked "what's the tip credit," by stating "Are you asking me how much tips they make?" (Pls.' Mem., Ex. 1, Dep. 35:4-5).

The alleged posters, without any information as to what they said, are not sufficient to establish notice; the sign off sheets do not tell the employees the information needed to explain the tip credit notice; and Mr. Anathapoulos' inability to answer plaintiffs' counsel's question as to what information was provided orally, whether due to lack of understanding or lack of knowledge, is insufficient to establish that proper oral notice was given.

### D. Minimum Wage Claims Under the NYLL

Plaintiffs also bring claims of minimum wage violations under the NYLL. Like the FLSA, the NYLL requires an employee bringing an action for unpaid minimum wages to prove that he performed work for which he was not properly compensated. Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 41-42 (E.D.N.Y. 2015) (quoting Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011)); Flores v. J & B Club House Tavern, Inc., No. 10 CV 4332, 2012 WL 4891888, at *1 (S.D.N.Y. Oct. 16, 2012) (discussing that under the NYLL, plaintiffs have the burden to prove that they performed the work for which they claim the defendant failed to compensate them). Although the minimum wage rate is set forth in NYLL § 652(1), the NYLL allows employers to pay tipped workers in the food service industry a lower minimum wage by taking a "tip credit," provided that the wage and the employee's tips, taken together, are at least equivalent to the minimum wage. See N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 146-1.3; Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015).

In order for a defendant employer to take advantage of the "tip credit" under the NYLL, the defendant has the burden of proving compliance with all of the following notice and record-

keeping requirements.  See 12 N.Y.C.R.R. § 146-2.2(d).  First, an employer must provide the employee, prior to the start of employment, with "written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payment."  12 N.Y.C.R.R. § 146-2.2(a); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 38-39.  Second, this written notice must state "that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate."  12 N.Y.C.R.R. § 146-2.2(a).  Third, the notice must be provided in English and in "any other language spoken by the new employee as his/her primary language."  Id. § 146-2.2(a)(1)-(2).  Fourth, if there is any change in the employee's hourly rates of pay, then the employer must provide a new notice.  Id. § 2.2(b).  Fifth, the employer must keep "[a]n acknowledgment of receipt signed by the employee . . . on file for six years."  Id. § 146-2.2(c).  In addition, the employer may not retain any portion of an employee's tips.  See Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007) (holding that violations of NYLL § 196-d render an employer ineligible to receive a tip credit under New York law).

Although the "tip credit" requirements under the NYLL are similar to those under the FLSA, they are not identical.  Thus, courts have found that evidence of oral notice of the tip credit provision to employees, which may satisfy the notice requirement of the FLSA, would not satisfy the NYLL.  See Salinas v. Starjem Rest. Corp., No. 13 CV 2992, 2015 WL 4757618, at *16 (S.D.N.Y. Aug. 12, 2015) (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 289 (S.D.N.Y. 2011)) (holding that "[a]lthough '[a] generic government poster could inform employees that minimum wage obligations exist, [it] could not possibly inform employees that

20

their employers intend to take the tip credit with respect to their salary'"); Inclan v. New York

Hosp. Grp., Inc., 95 F. Supp. 3d at 501 (holding that the employer could not claim the tip credit

under NYLL because the employer did not provide the employee with a wage notice containing

allowances, including tip allowances, at the time of the employee's hiring, "and then annually on

or before the first of February").

Plaintiffs contend that there is no dispute that defendants failed to provide proper written

notice to the tipped employees as required by the New York Hospitality Wage Order

("NYHWO"), 12 N.Y.C.R.R. § 146.2.2. (Pls.' SJ Mem. at 9). The NYHWO requires the

employer "prior to the start of employment" to give each employee "written notice of the

employee's regular hourly pay rate, the amount of tip credit, if any, to be taken from the basic

minimum hourly rate, and the regular payday." 12 N.Y.C.R.R. § 146-2.2. The law is clear that

"[f]ailure to provide adequate tip credit notice under 146-2.2 invalidates any tip credit claimed by

the employer." Reyes v. Sofia Fabulous Pizza Corp., No. 13 Civ. 7549, Dkt. No. 37, Slip Op.

(S.D.N.Y. April 7, 2014), report and recommendation adopted by, 2014 WL 1744254 (S.D.N.Y.

April 24, 2014). Although the NYHWO only went into effect on January 1, 2011, courts have

held that the NYHWO was "meant to clarify the existing notice requirements, not impose new

preconditions." Cuzco v. F&J Steaks 37th St. LLC, No. 13 CV 1859, 2014 WL 2210615, at *2

(S.D.N.Y. May 28, 2014). In Cuzco, the court noted that prior to the enactment of the NYHWO,

New York regulations required notice of the tip credit through the posting of a notice at the

workplace, a statement provided to employees with each paycheck listing allowances claimed as

part of the tip credit, and maintenance of weekly payroll records showing the allowances

claimed. Id. at *5. See also Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009). Thus, even prior to January 1, 2011, employers who failed to provide their employees with itemized tip credit amounts on their paystubs could not claim a tip credit under the NYLL.

Defendants have not presented any evidence to even suggest that written tip credit notice was provided in accordance with the NYHWO prior to 2013, and even after 2013, the notice provided still failed to provide the required information in that it did not specify "the amount of tip credit, if any, to be taken from the basic minimum hourly rate." (Compare 12 N.Y.C.R.R. 146-2.2, with Pls.' Ex. 4 (containing an unchecked box next to "Tips per hour" under the allowances taken section)).

Accordingly, the Court respectfully recommends that summary judgment be granted on the plaintiffs' minimum wage claims under the FLSA and NYLL.

### E.  Plaintiffs' Time Shaving Claims Under the FLSA and NYLL

Plaintiffs also move for summary judgment on their claims that the defendants failed to pay all non-exempt employees for the total number of hours that they worked because the defendants had a policy and practice of "rounding down" the number of hours shown on the punch cards to the nearest whole hour. (Pls.' SJ Mem. at 11-12). In support of this claim, plaintiffs point to the paystubs and payroll records which show that the employees were only paid for whole-number working hours, despite the punch cards showing that there were times when the plaintiffs worked minutes longer than the whole numbers for which they were paid. (Id. (citing Pls.' SJ Mem., Exs. 6-8)). Plaintiffs also point to the deposition of John Athanasopoulos, who conceded that defendants rounded down employees' hours to the next whole hour. (Id. at

22

12-13 (citing J. Athanasopoulos Dep. 44:10-20 and quoting Pls.' Ex. 9)). Plaintiffs contend that summary judgment should be granted on this claim because there is no material fact in dispute that this was defendants' practice to pay employees only up to the nearest whole hour even if they actually worked longer.  (Id. at 13-14).

Defendants contend that this practice of "rounding down" "actually favors employees, e.g., employees get paid for time they did not work." (Defs.' SJ Opp. at 10).  Defendants contend that even though employees clock in "on the hour, they do not start work until fifteen to thirty minutes past the hour." (Id. at 10 (citing Pls.' SJ Mem., Exs. 1, 2)).  Thus, defendants argue that if an employee clocks in at 9:00 and records that on her time sheet as when she started working, and she works until 6:00, she is paid for the entire 9 hours even though she actually did not start working until 9:15.  (Id.)  In addition, defendants argue that sometimes employees leave early and yet they are still paid for the entire time.  (Id. at 11 (citing J. Athanasopoulos Dep.)). Defendants further argue that defendants' practice of requiring employees to clock in on the hour, even if they do not start work right away, means that any claim of time shaving is de minimis when considered against the fact that defendants paid for the time prior to their starting work each day.  (Id.)  The Court recognizes that if the employees were at times paid for hours that they were not working, there would be no wage violation.  However, the employer may not simply decide not to pay minimum wage and overtime for all hours that were worked simply because the employer believes there were times when the employees were overpaid.  Especially where as here, the records fail to accurately reflect the hours worked, the employer may not engage in time shaving.

23

In reply to defendants' arguments, plaintiffs note that the issue of this "policy" of employees' shifts not beginning until 15 to 30 minutes after they clocked in was not raised by Mr. Athanasopoulos during his deposition; it was first raised in the affidavits submitted in connection with this motion. (Pls.' SJ Reply at 11). As discussed <u>supra</u> at 11, a party may not create an issue of fact by an affidavit contradicting his prior testimony. More importantly, as the evidence shows, the employees did not always clock in on the hour. Instead, the time cards produced by defendants demonstrate that class members clocked in sometimes at 5:47, 5:51 or 7:39. (Pls.' SJ Reply at 11 (citing Defs.' SJ Opp., Ex. 5)).

Plaintiffs also note that while defendants were able to point to one instance where someone was overpaid, plaintiffs point to numerous instances where the employees were actually underpaid. (<u>Id.</u> at 12). Plaintiffs also dispute the claim that the impact of this rounding process was <u>de minimis</u>, noting that in many instances the rounding resulted in depriving plaintiffs of pay for anywhere from 12 to 59 minutes of work time per day. (<u>Id.</u> at 11). Aggregated on a daily basis, such amounts are not <u>de minimis</u> as that concept has been described in 29 C.F.R. 785.47 (stating that the <u>de minimis</u> rule applies where "a few seconds or minutes of work are involved" and where there are "considerations justified by industrial realities" which are not present here). <u>See also</u> <u>Hernandez v. NJK Contractors, Inc.</u>, No. 09 CV 4812, 2015 WL 1966355, at *26 (E.D.N.Y. May 1, 2015) (citing <u>Singh v. City of New York</u>, 524 F.3d 361, 371 (2d Cir. 2008)) (holding that where employees spent approximately thirty minutes extra before and after their work shifts, this amount of time is not considered <u>de minimis</u>). An employer may not "arbitrarily" fail to count time worked.

Having considered all of the arguments, the Court finds that plaintiffs have established that there are no material issues of fact in dispute as to the policy that defendants have with respect to rounding down hours worked, nor is there any dispute that in many instances, this practice resulted in a significant loss of pay to certain of the class members. Accordingly, the Court respectfully recommends that summary judgment be granted on plaintiffs' rounding claim.

### F. Plaintiffs' Spread of Hours Claims

Plaintiffs move for summary judgment on their claims that defendants failed to pay plaintiffs spread of hours compensation under the NYLL for every day in which the spread of hours exceeded ten hours. (Pls.' SJ Mem. at 14-15). See 12 N.Y.C.R.R. § 146-1.6. In support of this claim, plaintiffs point to payroll records showing that defendants never paid spread of hours pay even though plaintiffs and other class members regularly worked more than 10 hours in a day. (Pls.' SJ Mem. at 14-15). When questioned during his deposition as to whether he knew what a spread of hours is, John Athanasopoulos, who was in charge of the compensation policies of the defendants, testified that: "Is that the one over 40 hours or more you get paid extra?" (Id. at 15 (quoting J. Athanasopoulos Dep. at 35-36)).

Defendants argue that there is an issue of fact in dispute as to whether spread of hours compensation was paid, because Athanasopoulos understood the concept of paying overtime when due. (Defs.' SJ Mem. at 13). In further support of their claim that there are facts in dispute, defendants argue that when employees work overtime, defendants "pay spread of hours compensation, indicating that employees receive notice of their overtime rate and that overtime pay is properly paid by the company." (Id. at 14).

25

It is unclear to the Court how these arguments demonstrate that there is a material issue of fact in dispute as to whether the defendants actually paid spread of hours pay for every time an employee worked more than 10 hours in one day. Defendants have not presented any pay records showing that spread of hours pay was given to any employee. Moreover, while defendants may contend that John Athanosopoulos did understand the concept of paying "overtime," that is a very different concept than spread of hours pay and defendants' argument suggests that even now, it may be unclear that defendants understand their statutory obligation.

Accordingly, based on the uncontroverted facts presented by plaintiffs and the absence of any testimony or records to raise a material issue of disputed fact as to whether spread of hours pay was actually made by the defendants, the Court respectfully recommends that summary judgment be granted in favor of plaintiffs on their spread of hours claim.

### G. Plaintiffs' Wage Statement Claims

Plaintiffs also move for summary judgment on their claims that defendants failed to provide paystubs to employees for the period between April 9, 2011, when the WTPA went into effect, and January 2013, when defendants began to provide paystubs. (See Pls.' SJ Mem. at 10, 16-18). For the period after January 2013, plaintiffs claim that defendants failed to provide "proper" paystubs in that they failed to set forth a line item indicating the amount of tip credit taken and failed to state the correct hours worked because of the time shaving practice. (Id. at 10).

Section 195(3) of the NYLL, which went into effect on April 9, 2011, requires that every employer provide his or her employees with "a statement with every payment of wages," listing

26

various information, including the dates of work covered by the payment, information identifying

the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the

number of hours worked.  N.Y. Lab. L. § 195(3).  If such notice is not provided to the employee,

"he or she shall recover in a civil action damages of one hundred dollars for each work week that

the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred

dollars."  Id. § 198(1-d).  Plaintiffs cite to Mr. Athanasopoulos' deposition where he admitted

that prior to January 2013, no written wage statement was provided and the plaintiffs were paid

in cash; the defendants did not begin providing written WTPA wage notices until January 2013.

(Pls.' SJ Mem. at 17).

Defendants dispute that plaintiffs did not receive pay stubs in accordance with New York

law, arguing that John Athanasopoulos testified that:

> The people that are on the books I tell them their hours,
> I tell them what they make. They deduct Social Security,
> FICA, whatever they gotta deduct and they give me a
> stub of what they're supposed to make, clean money, and
> that's what they get paid in cash.

(Defs.' SJ Opp. at 14 (quoting J. Athanasopoulos Dep. at 29)).  In Reply, plaintiffs contend that

their claims are for the period prior to January 2013, when defendants "utterly failed to provide

any wage statements."  (Pls.' SJ Reply at 13).  Furthermore, a review of the wage statements

provided after January 2013 show deficiencies in that they do not indicate the amount of tip

credit taken.  (See Pls.' SJ Mem., Ex. 3).  Nor do they set down an accurate number of hours

worked given that the Court has already determined that the defendants engaged in a rounding

policy such that the actual hours were not reported.  (See discussion supra at 22-25).  The Court

therefore respectfully recommends that plaintiffs be granted summary judgment on their wage

statement claims.

### H.  Three-Year Statutory Period

Plaintiffs seek an order granting summary judgment in their favor on the claim that

plaintiffs are entitled to recover unpaid minimum wages and overtime over a three-year statutory

period under the FLSA because defendants' conduct was willful.

The FLSA generally provides for a two-year statute of limitations for enforcement of its

provisions.  29 U.S.C. § 255(a).  This limitations period may be extended to three years,

however, upon a showing that an employer's violation of the FLSA was willful.  Id.  An

employee bringing suit bears the burden of demonstrating that the violations were willful.

Porter v. New York Univ. Sch. of Law, 392 F.3d 530, 531 (2d Cir. 2004).

In support of their claim that defendants acted willfully, plaintiffs point out that John

Athanasopoulos, who was in charge of the restaurant's compensation policy, admitted that he

paid certain employees in cash off the books even though it was technically illegal (Pls.' SJ

Mem. at 19 (citing J. Athanasopoulos Dep. at 73-74)); that he never consulted an attorney

regarding proper wage and hour compliance (id. (citing J. Athanasopoulos Dep. at 109)); and that

he did not know what a tip credit or spread of hours premium was and failed to give the

employees proper notice.  (Id. at 20 (citing J. Athanasopoulos Dep. at 35)).

As to plaintiffs' claim that the statute of limitations should be extended to three years

because of defendants' willful conduct, defendants do not address this issue in their opposition

papers, so it appears that they do not dispute that the statute of limitations should be three years.

Rather, defendants only address plaintiffs' claim that defendants acted willfully in two sentences

under the liquidated damages portion of their opposition papers. Defendants make a vague conclusory statement that "[p]laintiffs cannot demonstrate that the [d]efendants acted with the requisite willfulness." (Defs.' SJ Opp. at 15).

Defendants also dispute plaintiffs' claim that John Athanasopoulos acted recklessly when he testified at his deposition that he did not understand the concept of spread of hours. According to defendants, Mr. Athanasopoulos understood the "concept" of spread of hours, but not the question he was asked at the deposition. As evidence of Mr. Athanasopoulos' "understanding" of spread of hours, defendants point to the fact that Mr. Athanasopoulos understood the concept of paying overtime when due. (Id. (citing J. Athanasopoulos Dep. at 35)). For example, when Mr. Athanasopoulos was asked what spread of hours is, he answered by asking if spread of hours was "the one over 40 or more you get paid extra." (Id.)

However, this Court has already observed that this testimony does not demonstrate defendants' understanding of their obligations to pay for spread of hours, or even to pay for overtime; rather, this testimony highlights defendants' lack of understanding as to their statutory obligations under the FLSA and NYLL. (See discussion supra at 25-26). Spread of hours pay does not depend on whether an employee works for more than 40 hours in a week, but depends on whether an employee works for more than 10 hours in a day. Therefore, it is possible for an employee to work for more than 10 hours in a single day without working more than 40 hours in a week. Accordingly, the Court finds unpersuasive defendants' argument that Mr. Athanalopoulos' answer about spread of hours pay being the "one [where] over 40 or more you get paid extra" shows that he understands its concept.

In light of the evidence established by Mr. Athanalopoulos at his own deposition that he

paid certain employees in cash off the books even though it was technically illegal, that he never

consulted an attorney regarding proper wage and hour compliance, and that he did not know what

a tip credit or spread of hours pay was, the Court finds that plaintiffs have shown that they are

entitled to recover during a three-year statutory period under the FLSA because defendants acted

willfully.


I.  Joint and Several Liability

Plaintiffs argue that defendants John Athanasopoulos, Stavros Moutopoulos, and 111

Atlas Restaurant[19] should be held jointly and severally liable as employers under the FLSA and

NYLL.  Under the FLSA, an "employer" is "any person acting directly or indirectly in the

interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  "Person" is

defined as "an individual, partnership, association, corporation, business trust, legal

representative, or any organized group of persons."  Id. § 203(a).  To "employ" means "to suffer

or permit to work."  Id. § 203(g).  An individual may be liable as an employer under the FLSA so

---

[19]Based on a review of plaintiffs' submissions, the plaintiffs' Notice of Motion for
Summary Judgment and Proposed Order only seek a finding that John Athanasopoulos, Stavros
Moutopoulos, and 111 Atlas Restaurant be held jointly and severally liable as employers.  (Pls.'
Mot. at 2; id. Ex. 1 at 2).  However, in plaintiffs' opening brief, they provide the following
heading: "[d]efendants Bill Athanasopoulos, John Athanasopoulos and 111 Atlas Restaurant
Corp. are Jointly and Severally Liable as Employers Under the FLSA and NYLL."  (Pls.' SJ
Mem. at 22).  There is no other mention of "Bill Athanasopoulos" in plaintiffs' opening brief;
rather, plaintiffs only provide briefing as to the employer status of John Athanasopoulos, Stavros
Moutopoulos, and 111 Atlas Restaurant Corp.  (Id. at 23-24).  In fact, in plaintiffs' reply, they
indicate that plaintiffs are not moving for summary judgment as to the employer status of Bill
Athanasopoulos at this time.  (Reply at 15 n.8).  As to the remaining named defendant, Vasilios
Athanasopoulos, there is no mention of this individual in any of plaintiffs' submissions, and thus,
the Court concludes that plaintiffs are not moving for summary judgment as to defendant
Vasilios Athanasopoulos.

long as he exercises "operational control" over the employee in question, see Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff. Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).

Under the NYLL, an "employer" is "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. L. §§ 190(3), 651(6). Courts in this circuit have interpreted this definition coextensively with that of the FLSA. See, e.g., Chen v. Kaijou Restaurant, No. 13 CV 8968, 2016 WL 270870, at *2 (S.D.N.Y. Jan. 21, 2016). Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. L. § 651(5). In making these determinations, New York courts focus on the degree of control the alleged employer exercised over the alleged employee, analyzing whether the employee: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d at 34 (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 695, 802 N.E.2d 1090, 1095 (N.Y. 2003)).

As for John Athanasopoulos, plaintiffs contend that he admitted in his deposition that he: (1) had the power to hire and fire employees (Pls.' Mem. at 23 (citing J. Athanasopoulos Dep. at 16)); (2) supervised and controlled employee work schedules (id. (citing J. Athanasopoulos Dep. at 16)); (3) determined the employees' rate of pay and method of payment (id. (citing J. Athanasopoulos Dep. at 16)); and (4) maintained the payroll records. (id. (citing J.

Athanasopoulos Dep. at 17)).

Defendants' argument in opposition to summary judgment as to employer status for John Athanasopoulos is limited to the fact that the "only evidence indicating that Mr. Athanasopoulos' duties adhere to the four prongs of the 'economic reality test' stems from his deposition." (Defs.' SJ Opp. at 18). Defendants contend that since the Court "is not the factfinder and cannot draw inferences in Plaintiffs' favor" on a summary judgment motion, there are issues of fact in dispute here that weigh against granting summary judgment. (Id. at 17-18). Apart from this vague, conclusory argument, defendants do not specify what facts are in dispute, nor do they provide any authority for their argument that a party's own admissions in sworn deposition testimony cannot form the basis for a finding by the court in the context of summary judgment. Accordingly, the Court respectfully recommends that John Athanasopoulos be found to be an "employer" for purposes of liability under the FLSA and NYLL.

Similarly, as to 111 Atlas Restaurant Corp., although plaintiffs contend that defendants have conceded that 111 Atlas Restaurant Corp. is an "employer" under the NYLL and FLSA (see Pls.' SJ Mem. at 23), defendants maintain that 111 Atlas Restaurant Corp. is not an "employer." (See Defs.' SJ Opp. at 16). Apart from this conclusory statement, defendants again fail to identify what facts are in dispute, nor do they raise any specific arguments as to why 111 Atlas Restaurant Corp. is not an "employer" for purposes of the FLSA and NYLL. The Court, therefore, respectfully recommends that plaintiffs' motion for joint and several liability be granted as to 111 Atlas Restaurant Corp.

The parties also dispute whether Stavros Moutopoulos, a named defendant in the case,

32

should be found to be an "employer" based on John Athanasopoulos' deposition testimony.

According to John Athanasopoulos' testimony, Moutopoulos is his brother-in-law who "run[s] the restaurant" with him, who has the authority to hire and fire employees, to set compensation and increase pay, and who controls the employees' shifts and schedules. (Pls.' Mem. at 24 (citing J. Athanasopoulos Dep. at 18-19)). Moutopoulos is also an "owner" of the restaurant (id.), and even if he only exercised his authority occasionally, the issue is whether he had the power and authority to exercise control over the employees. See Irizarry v. Catsimatidis, 722 F.3d at 110.

Defendants again argue that while a factfinder might "infer" employer status from these facts, the court is not the factfinder on a summary judgment motion and may not make such inferences. The problem with defendants' argument, as with their argument as to John Athanasopoulos' employer status, is that they have not provided a single fact upon which a factfinder could draw a contrary inference. They have not disputed the facts set forth in plaintiffs' 56.1 Statement in this regard and indeed, cannot dispute them, because they are based on defendants' own admissions. Accordingly, the Court respectfully recommends that Stavros Moutopoulos be found to be an employer for purposes of joint and several liability under the FLSA and NYLL.

Finally, as for defendant Bill Athanasopoulos, although defendants contend that summary judgment should be denied as to this defendant, plaintiffs have indicated that they are not moving for summary judgment as to his employer status at this time. (Reply at 15 n.8; see also supra note 19). Accordingly, the Court does not consider whether summary judgment is appropriate as

33

to this defendant.

J. Liquidated Damages Under the FLSA and NYLL

In addition to compensatory damages, plaintiffs seek a finding that they are entitled to receive liquidated damages pursuant to both federal and state law. See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1). Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA. Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260). Moreover, the employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), and awarding 100% liquidated damages under the FLSA standard). This award serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA." Id. (quoting Herman v. RSR Secs. Servs., Ltd., 172 F. 3d 132, 141-42 (2d Cir. 1999)).

Plaintiffs argue that they are entitled to liquidated damages under the FLSA because defendants have not demonstrated that they acted in "'good faith' with objectively 'reasonable

34

grounds' for believing that [their] acts or omissions did not violate the FLSA." (Pls.' Mem. at 20 (quoting Barfield v. New York City Health & Hosp. Corp, 537 F.3d 132, 150 (2d Cir. 2008))). Meanwhile, defendants do not appear to address these arguments in their papers and therefore, the Court finds that they have conceded the issue of liquidated damages. Further, since the Court has found that defendants acted willfully in violating the FLSA (see discussion supra § I.H), defendants cannot meet their burden of showing that they had a good faith basis for believing their actions did not constitute FLSA violations. Accordingly, the Court finds that plaintiffs are entitled to an award of liquidated damages under the FLSA.[20]

Like the FLSA, the NYLL provides for liquidated damages for wage-claim violations. Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful. N.Y. Lab. Law § 663(1) (1967). However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer. Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)). The employer again bears the burden of proving good faith and reasonableness. Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the

---

[20]Since the Court has found that defendants acted willfully in violating the FLSA, and that plaintiffs may recover during a three-year statutory period under the FLSA (see discussion supra at 28-30), plaintiffs are entitled to liquidated damages under the FLSA for three years prior to the filing of the Complaint, from November 26, 2011 through November 26, 2014. See, e.g., Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d at 87 (holding that plaintiff may recover on her federal claims for unpaid wages under the FLSA for three years prior to the filing of the Complaint).

current state standard of good faith." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014); Eschmann v. White Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9).

In addition, until April 9, 2011, an employee was only entitled to receive liquidated damages under the NYLL in the amount of 25% of the total unpaid wages. However, on April 9, 2011, the NYLL was amended to authorize liquidated damages amounting to 100% of the total unpaid wages for violations thereafter. See N.Y. Lab. Law § 663(1).

Plaintiffs argue that they are entitled to liquidated damages under the NYLL because defendants again failed to meet their burden of demonstrating good faith and reasonableness in ensuring compliance with the NYLL. (Pls.' SJ Mem. at 21). As a response, defendants maintain that they did not violate the NYLL, and argue that plaintiffs "cannot demonstrate that the defendants acted with the requisite willfulness or recklessness that warrants . . . liquidated damages." (Defs.' SJ Opp. at 15). As discussed above, the Court has found that plaintiffs established that defendants acted willfully. Moreover, defendants cannot show that they had objectively "reasonable grounds" for believing their acts did not violate the NYLL. (See discussion supra § I.H). Therefore, under both standards of willfulness and good faith, the Court finds that plaintiffs are entitled to an award of liquidated damages under the NYLL.

Given the amendments made to the NYLL, the Court finds that for the period of May 27, 2009 through April 9, 2011, plaintiffs are entitled to liquidated damages equal to 25% of their total unpaid wages, and for the period of April 9, 2011 through May 27, 2015, plaintiffs are

entitled to liquidated damages equal to 100% of their total unpaid wages.

Although the Court finds that plaintiffs may be entitled to an award of liquidated damages under both the NYLL and the FLSA, the Court respectfully recommends that plaintiffs not be awarded cumulative liquidated damages for any overlapping claims for the three year period covered by FLSA. (See supra note 20). District courts in this circuit have disagreed as to whether a plaintiff may be awarded cumulative awards of liquidated damages under both statutes, thus creating a significant body of case law both for and against the cumulative recovery of liquidated damages. Compare Asfar v. BBQ Chicken Don Alex No. 1 Corp., No. 14 CV 5665, 2016 WL 1276417, at *2 (E.D.N.Y. Mar. 29, 2016) (holding that "if both FLSA and NYLL liquidated damages are compensatory, however, . . . plaintiff would still stand to be compensated twice. The Court therefore modifies [plaintiff]'s award so that she recovers liquidated damages only under one statute) and Gortat v. Capala Bros., 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013) (holding that "the distinction between compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL . . . exalt[s] form over substance, and also [is] not persuasive" and denying plaintiff's request for double liquidated damages under both statutes), with Griffin v. Astro Moving & Storage Co. Inc., No. 11 CV 1844, 2015 WL 1476415, at *6 (E.D.N.Y. Mar. 31, 2015) (holding that plaintiff may be awarded liquidated damages under both the NYLL and FLSA because they serve different purposes).

However, this Court recently found that "legislative developments have decisively eroded the justification typically offered for simultaneously awarding damages under both statutes." Asfar v. BBQ Chicken Don Alex No. 1 Corp., 2016 WL 1276417, at *1; see also Chen v. New

Fresco Tortillas Taco LLC, No. 15 CV 2158, 2015 WL 5710320, at *7 (S.D.N.Y. Sept. 25, 2015) (holding that "[b]ecause both forms of liquidated damages serve the same purpose and have the same practical effect of deterring wage violations and compensating unpaid workers," the NYLL's recent amendments have undermined the basis for distinguishing between the FLSA and NYLL liquidated damages provisions).

Originally, the rationale for permitting plaintiffs to recover double liquidated damages was that the two statutes' liquidated damages provisions served different purposes. See, e.g., Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 90 (E.D.N.Y. 2012). Some courts found that under the FLSA, liquidated damages served as compensatory damages while under the NYLL, liquidated damages were considered punitive in nature, and therefore it was not duplicative to award both at once. See, e.g., Asfar v. BBQ Chicken Don Alex No. 1 Corp., 2016 WL 1276417, at *1 (citing YuG. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008) (holding that "[l]iquidated damages under the FLSA are . . . compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation fo the FLSA . . . . In contrast, the liquidated damages provided for in the New York Labor Law are punitive in nature." (internal quotation marks omitted))); Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (citing cases).

However, the 2009 and 2011 amendments made to the NYLL have "spawned 'an emerging trend towards denying a cumulative recovery of liquidated damages' under the FLSA and NYLL." Hengjin Sun v. China 1221, Inc., 2016 WL 1587242, at *4 (quoting Santana v. Brown, No. 14 CV 4279, 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015)). Courts have

found that the 2009 and 2011 amendments "bring the two statutes more directly in line with one another, since both entail substantively similar 'good faith' standards and award 100% liquidated damages." Id. (quoting McGlone v. Contract Callers Inc., 114 F. Supp. 3d 172, 174 (S.D.N.Y. 2015); Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015)); see also Asfar v. BBQ Chicken Don Alex No. 1 Corp., 2016 WL 1276417, at *2 (holding that as a result of the 2009 and 2011 amendments, "damages under the NYLL now appear to be compensatory, much like damages under the FLSA"). After reviewing recent case law on the subject of awarding plaintiffs liquidated damages under both statutes, this Court agrees with the emerging jurisprudential trend in this circuit and respectfully recommends that plaintiffs not be awarded cumulative liquidated damages under both the FLSA and NYLL for overlapping claims.

Given this Court's recommendation that plaintiffs be granted summary judgment as to their minimum wage and time shaving claims under both laws, and their wage statement claims and spread of hours claims under the NYLL, plaintiffs "may recover under the statute which provides the greatest amount of damages." Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (holding that where plaintiffs have prevailed under both state and federal law, "the law providing the greatest recovery will govern"), report and recommendation adopted by, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)); Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195,

39

2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012).  In this case, the NYLL provides for the

greater recovery, as prevailing plaintiffs may recover both liquidated damages and pre-judgment

interest for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253,

265 (2d Cir. 1999).

     Accordingly, the Court respectfully recommends that plaintiffs not be awarded double

liquidated damages under both FLSA and NYLL for overlapping claims, but that they be

awarded liquidated damages under the NYLL.

### K. Summary

     In summary, the Court respectfully recommends that plaintiffs' motion for summary

judgment be granted as to their minimum wage and time shaving claims under both the FLSA

and NYLL and their wage statement and spread of hours claims under the NYLL.  As to

defendants John Athanasopoulos, Stavros Moutopoulos, and 111 Atlas Restaurant, the Court also

finds that these defendants are "employers" under the FLSA, and recommends that they be held

jointly and severally liable for defendants' violations under the FLSA and NYLL.  Finally, as to

liquidated damages, the Court respectfully recommends that plaintiffs not be awarded cumulative

liquidated damages under both the FLSA and NYLL for overlapping claims, and that they be

awarded liquidated damages under the NYLL.

## II. Motion for Class Certification

     Plaintiffs move for certification of a class pursuant to Federal Rule of Civil Procedure 23,

consisting of all non-exempt employees (both tipped and non-tipped) employed by defendants at

the Atlantic Diner for the six year period prior to the filing of this action, and a subclass of tipped

employees for the six year period prior to the filing of this action. (Pls.' Cert. Mem.[21] at 13).

Plaintiffs contend that the evidence, including defendants' testimony, plaintiffs' testimony,

affidavits, and documentary evidence, demonstrates "a systematic pattern of non-compliance

with the NYLL." (Id. at 13-14).

## A. Standards for Rule 23 Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if: (1) the
> class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiffs must also satisfy one of the three

subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or

would substantially impair the ability of other individuals to protect their interests; (2) injunctive

or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or

fact predominate over individual questions and a class action is superior to other methods for

bringing suit. Fed. R. Civ. P. 23(b). See generally Amchem Prods., Inc. v. Windsor, 521 U.S.

591 (1997). It is plaintiffs' burden to establish compliance with the requirements of Rule 23, but

---

[21]Citations to "Pls.' Cert. Mem." refer to the Memorandum of Law In Support of
Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23, dated December 24,
2015.

in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted). Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Collier v. Montgomery Cnty. Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000).

Defendants oppose plaintiffs' motion for class certification on the grounds that: 1) plaintiffs' proposed class fails to meet the numerosity requirement of Rule 23(a)(1); 2) plaintiffs cannot satisfy the commonality requirement of Rule 23(a)(2); 3) plaintiffs cannot demonstrate that the typicality requirement of Rule 23(a)(3) has been satisfied; 4) plaintiffs do not adequately represent the class; and 5) plaintiffs cannot show that common questions predominate over individual questions as required by Rule 23(b)(3). (Defs.' Cert. Opp.[22] at 1). The Court addresses each of these arguments in turn.

### 1) The Requirements of Rule 23(a)

#### a. Numerosity

Plaintiffs contend that in this case, the numerosity requirement of Rule 23(a) has been satisfied. (Pls.' Cert. Mem. at 15). As the Second Circuit has noted, "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 115 U.S. 2277 (1995); see also Alleyne v. Time Moving & Storage Inc., 264

---

[22]Citations to "Defs.' Cert. Opp." refer to the Memorandum of law in Opposition to Plaintiffs' Motion to Class Certification Pursuant to Fed. R. Civ. P. 23, dated January 28, 2016.

F.R.D. 41, 48 (E.D.N.Y. 2010).  Plaintiffs note that this Court's Order of May 27, 2015, granting

plaintiffs' motion for certification of a collective action, directed defendants to produce a list of

employees employed at the Atlantic Diner for six years prior to the date of the Order.  (Pls.' Cert.

Mem. at 15).  Pursuant to that Order, defendants produced a list of 115 non-exempt employees

employed from 2011 through May 2015.  (Id.)  Thus, plaintiffs argue that the numerosity

requirement has been satisfied.

Defendants argue that only three of the 115 employees on the list decided to opt in to the

lawsuit and therefore, only three employees beside the plaintiff Velez have alleged that

defendants engaged in any misconduct.  (Defs.' Cert. Opp. at 3-4).  The law in this circuit is

clear, however, that the number of opt-ins under the FLSA has no bearing on the numerosity

requirement for the Rule 23 class.  See Meyers v. Crouse Health Sys., 274 F.R.D. 404, 414

(N.D.N.Y. 2011); Niemiec v. Ann Bendick Realty, No. 04 CV 897, 2007 U.S. Dist. LEXIS

97531, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2007).  In Noble v. 93 Univ. Place Corp.,

224 F.R.D. 330, 342 (S.D.N.Y. 2004), the court found numerosity despite a low number of opt-

ins, noting the employees' fear of reprisal in joining the FLSA collective action.  See also

Jankowski v. Castaldi, No. 01 CV 164, 2006 WL 118973, at *2 (E.D.N.Y. Jan. 13, 2006)

(holding that the numerosity requirement had been met despite only 40 out of 450 employees

opted-in to the FLSA action).

Defendants argue that it is unknown whether any of these 115 employees' claims would

be barred by the statute of limitations.  (Defs.' Cert. Opp. at 4).  Specifically, defendants argue

that because the FLSA has a two-year statute of limitations, any potential plaintiff whose claim is

43

more than three years old would only have state law claims, and the "Court would have no subject matter jurisdiction over claims that are more than three years old since such claims would be pure state law claims." (Id. at 7). Defendants' argument as to the statute of limitations is misplaced and ignores the fact that the motion for class certification does not implicate the FLSA in any way; the motion is directed only at the state law claims under the NYLL, which carries a six year statute of limitations. Moreover, as plaintiffs note, the defendants' production of a list of 115 employees was limited to the period of only 3.5 years prior to the suit, and by defendants' own admission does not include all potential employees who may be covered by the NYLL, which extends back 6 years. (Pls.' Reply[23] at 1). Thus, the Rule 23 class may in fact be larger than 115.

As for jurisdiction, it is clear that the court has jurisdiction over the related NYLL claims because there are members of the class with valid federal claims. Courts in this circuit routinely exercise supplemental jurisdiction over NYLL claims even when the plaintiff's FLSA claims have been dismissed as time-barred. See Severin v. Project OHR, Inc., 2011 U.S. Dist. LEXIS 99839, at *21-23 (S.D.N.Y. Sep. 1, 2011); see also Hernandez v. NJK Contrs., Inc., No. 09 CV 4812, 2015 U.S. Dist. LEXIS 57568, at *64 (E.D.N.Y. May 1, 2015).

Furthermore, citing Robidoux v. Celani, defendants contend that plaintiffs have failed to demonstrate that joinder of all class members would be impractical. (Id. at 4 (citing 987 F.2d 931, 936 (2d Cir. 1993))). Defendants argue that joinder is not difficult, where as here, the class

---

[23]Citations to "Pls.' Reply" refer to plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23, dated February 12, 2016.

members "are easily identifiable and not so geographically dispersed." (Id. (citing LeGrand v.
New York City Transit Auth., No. 95 CV 333, 1999 WL 342286, at *5 (E.D.N.Y. May 26,
1999)). According to defendants, all of the potential class members "worked in Queens County,
New York, and primarily reside in the same or surrounding counties, as opposed to being
distributed over the entire state of New York." (Id. at 5). Moreover, as defendants note, their
employee records with the names, addresses, and phone numbers make it feasible to locate the
potential members of the class. Defendants further argue that individuals who wished to seek
relief would "recover the same relief that may be attained by class action," simply by joining the
pending collective action. (Id.)

In Robidoux v. Celani, the Second Circuit stated that, when considering if plaintiffs had
met their burden of demonstrating that joinder was impractical, courts should consider factors
such as "judicial economy arising from the avoidance of a multiplicity of actions, geographic
dispersion of class members, financial resources of class members, the ability of claimants to
institute individual suits, and requests for prospective injunctive relief which would involve
future class members." 987 F.2d at 936. These additional factors, beyond the size of the class,
are generally considered when the class is less than 40 members. See Lawrence v. N.Y.C. Trans.
Auth., No. 95 CV 0333, 1999 U.S. Dist. LEXIS 8020, at *173 (E.D.N.Y. May 26, 1999); Ansari
v. New York Univ., 179 F.R.D. 112 (S.D.N.Y. 1998). Thus, in this case, where the size of the
potential class is at least 115 people, the impracticality of joinder is clear.

Moreover, even if the Robidoux factors were to be considered, geographic dispersion of
the proposed class is only one factor to be considered: "Rule 23 does not require that the

proposed class be dispersed over a wide geographic area in order for joinder to be deemed impracticable." Moreira v. Sherwood Landscaping Inc., No. 13 CV 2640, 2015 U.S. Dist. LEXIS 43919, *25 (E.D.N.Y. Mar. 31, 2015). Indeed, the other Robidoux factors – financial resources of the class members, the ability of the individuals to file individual actions, and requests for prospective relief for future class members – all favor a class action in this case. As plaintiffs point out, litigation costs in wage and hour cases "would likely exceed any gains from overtime wage recovery,' making it less likely that class members would pursue claims individually. (Pls.' Reply at 6 (citing Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2006 WL 2819730 at *16 (S.D.N.Y. Sept. 29, 2006)). More importantly, judicial economy is served by a class action in this case where there could be multiple redundant lawsuits filed raising the same or similar issues.

Having considered the parties' various arguments, including the fact that there are potentially more than 115 Class Members, and the inconvenience of trying individual actions, as well as the financial resources of potential class members, the Court concludes that these factors all weigh heavily in favor of a class action in this case. See Savino v. Comput. Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998). Accordingly, the Court finds that the requirement of numerosity has been satisfied.

b. Commonality and Typicality

In determining whether plaintiffs can show that the claims of the potential Class Members share common questions of law or fact, the Rule does not require that "all questions of law or

fact raised be common." <u>Savino v. Comput. Credit, Inc.</u>, 173 F.R.D. at 352 (quoting <u>Halford v.</u>

<u>Goodyear Tire & Rubber Co.</u>, 161 F.R.D. 13, 18 (W.D.N.Y. 1995)); <u>see also</u> <u>Frank v. Eastman</u>

<u>Kodak Co.</u>, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (holding that the claims need not be identical

to satisfy the commonality requirement, but that they must share common questions of law or

fact). There must be a "unifying thread" among the claims to warrant class certification.

<u>Kamean v. Local 363, Int'l Bhd. of Teamsters</u>, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). As long as

"common questions . . . predominate," any differences in the circumstances raised by individual

members will not defeat the requirement of commonality. <u>In re Sadia, S.A. Sec. Litig.</u>, 269

F.R.D. 298, 304 (S.D.N.Y. 2010). In other words, "there need only be a single issue common to

all members of the class," as the "critical inquiry is whether the common questions lay at the

'core' of the cause of action alleged." <u>Savino v. Comput. Credit, Inc.</u>, 173 F.R.D. at 352.

      Here, there are several common legal and factual issues. Specifically, the named

plaintiffs and the class members allege that defendants: 1) failed to pay tipped employees the

proper minimum wage, instead paying them the minimum wage minus the tip credit even though

defendants failed to satisfy the NYLL requirements to claim a valid tip credit; and 2) failed to

pay all class members, not just the tipped employees, for their full hours worked because they

allegedly shaved hours by rounding to the employee's nearest hour of working time; and 3) failed

to provide all employees the required wage notices under the WTPA. (Pls.' Mem. at 18).

      Defendants contend that because the tip credit claims only apply to the tipped employees,

the class is overinclusive in that includes both tipped and non-tipped employees with varying

claims that defeat the commonality requirement of Rule 23. (Defs.' Cert. Opp. at 10-11). In

47

response, plaintiffs argue that there are two categories of class members: all non-exempt employees and a subclass thereof made up of a tipped subclass. (Pls.' Reply at 11). As plaintiffs note, all members of the broader class, including the tipped employees, are affected by the time shaving, spread of hours claims, and wage statement and wage notice claims. (Id.) There are common issues of fact and law as to these claims for all employees. (Id.) The argument that the wage notice and wage statement claims only apply to the tipped employees (see Defs.' Cert. Opp. at 11) ignores the fact that while the information about the tip credit was only required to be included for tipped employees, the defendants are also alleged to have failed to provide any wage statements or wage notices to any of the non-exempt employees until January 2013, when defendants began using a payroll system.

Defendants also challenge the commonality element by arguing that with respect to the allegation that defendants failed to provide the requisite notice, defendants dispute that claim and contend that the posters provided in the restaurant were sufficient. (Id. at 10). Even if there is an issue as to the adequacy of the explanation on the poster, the differing levels of English fluency among the staff members raise multiple questions of fact among the class members as to whether the notice was in fact adequate depending on the fluency of the individual. (Id.) However, as the Court noted, the language of the poster – if it existed at all – is irrelevant to the plaintiffs' claims under the NYLL. While some courts have found posted language sufficient for FLSA claims, this issue on the Rule 23 Class certification motion only looks to whether the poster would be sufficient to provide the notice required by the NYLL. As discussed above, it would not. (See discussion supra at 13-17).

48

Accordingly, the Court concludes that there are sufficient issues common to all class members to satisfy the requirements of Rule 23(a)(2).

### c. Typicality

Rule 23(a)(3) requires that plaintiffs' claims be typical of the claims of the Class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d at 936. Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, defendants argue that plaintiff Velez's claims are "atypical" of the class since they would differ from the claims of the non-tipped employees. (Defs.' Cert. Opp. at 12). Defendants provide no further explanation for this argument and no authority to support such a claim. (See id.) As noted above, Velez's claims of time shaving, failure to pay spread of hours pay, and failure to provide proper wage statements and notices, all arise from the same factual and legal circumstances that form the bases of the larger class's claims. (Pls.' Reply at 13). The fact that Velez and the tipped employees have additional claims based on the defendants' failure to pay proper minimum and overtime wages does not change the typicality of plaintiffs' overall argument that the manner by which defendants failed to pay plaintiffs and the Class Members for the full amount of time worked demonstrates a company policy and pattern, leading all of them

49

to suffer the same type of injuries.  (Id.)  It is clear that minor variations in fact patterns will not

defeat the typicality requirement where the same unlawful conduct is directed to plaintiff and

other members of the class.  Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 86-87

(S.D.N.Y. 2001).  Thus, irrespective of any differences in the amounts of overtime, wages or

maintenance allowances owed, plaintiff Velez's claims and the claims of the Class Members all

stem from defendants' alleged uniformly wrongful conduct; plaintiffs' claims are therefore

sufficiently typical to warrant certification.

> ## d.  Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately

represented, the Second Circuit has established a two-prong test.  In re Drexel Burnham Lambert

Grp., 960 F.2d 285, 291 (2d Cir. 1992).  First, there must be a showing that class counsel is

"'qualified, experienced and generally able' to conduct the litigation."  Halford v. Goodyear Tire

& Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d

Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second, the class members'

interests may not be "antagonistic" to one another.  County of Suffolk v. Long Island Lighting

Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

Here, plaintiffs Velez and Acevedo have submitted affidavits demonstrating their active

participation in the case and their understanding of their responsibilities in a wage and hour case

like this one.  (Pls.' Mem. at 19).  Class counsel also claims to have extensive experience in

prosecuting wage and hour class actions (see id. at 20-21 (listing the cases in which they have

participated)).  Defendants do not appear to be challenging class counsel's ability to prosecute

this case on behalf of the class members. Indeed, plaintiffs' counsel claim that they have demonstrated their ability to prosecute this case diligently and to represent the interests of the potential class members in that they have done substantial work in investigating and prosecuting the claims, and invested substantial financial resources in the litigation. (Id. at 20).

Based on the nature of the plaintiffs' claims and on the representation that no conflict of interest exists between the plaintiffs and the class members (see Pls.' Mem. at 19-20), the Court finds that plaintiffs' claims are so interrelated with those of the class members that plaintiffs will serve as adequate Class representatives.

    2) <u>The Requirements of Rule 23(b)(3)</u>

        a. <u>Common Questions Predominate Over Individual Issues</u>

Plaintiff must also establish that the proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class. <u>Amchem Prods, Inc. v. Windsor</u>, 521 U.S. at 623. Courts focus on whether there are common questions related to liability. <u>See</u> <u>Smilow v. Sw. Bell Mobile Sys. Inc.</u>, 323 F.3d 32, 40 (1st Cir. 2003); <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007). Even if there are defenses that affect class members differently, that alone "does not compel a finding that individual issues predominate over common ones." <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 138 (2d Cir. 2001) (quoting <u>Waste Mgmt. Holdings, Inc. v. Mowbray</u>, 208 F.3d 288, 296 (1st Cir. 2000)), <u>overruled on other grounds</u>, <u>In re IPO Secs. Litig.</u>, 471 F.3d 24 (2d Cir. 2006).

In this case, defendants argue that because plaintiffs cannot demonstrate that the elements of commonality and typicality required by Rule 23(a), they are unable to satisfy Rule 23(b)(3) as well. (Defs.' Cert. Opp. at 13 (quoting Myers v. Hertz Corp., No. 02 CV 4325, 2007 WL 2126264, at *6 (E.D.N.Y. July 24, 2007) (stating that Rule 23(b)(3)'s requirement that common questions predominate is "'similar to the commonality and typicality requirement' of Rule 23(a) except that it is 'more demanding'")). However, as the Court has already found, in this case there are legal and factual questions common to all class members based on the defendants' wage practices. (See discussion supra at 11-28). These include: 1) whether the class members were paid for all of the hours worked as a result of defendants' policy of time shaving; and 2) whether the tipped subclass members were paid minimum wage. (Id.) Even though there may be a need to make individualized determinations on damages issues, the Second Circuit has made it clear that "liability can be determined on a class-wide basis." In re Visa Check/Master Money, 280 F.3d 124, 139 (2d Cir. 2001). Indeed, courts have held that issues about whether employees were paid appropriately "are about the most perfect questions for class treatment." Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. at 373.

Thus, the Court finds that common questions predominate in this case.

### b. Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal

52

quotation marks omitted). The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; [(3)] the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, plaintiffs claim that it is unlikely that the individual class members would

bring their own actions because the cost of litigation would likely outweigh any individual

recovery. (Pls.' Mem. at 23). See Jankowski v. Castaldi, No. 01 CV 164, 2006 WL 118973, at

*4 (E.D.N.Y. Jan. 13, 2006); Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005).

Moreover, in addition to achieving economies of scale for the class members, proceeding as a

class action would, in this case, preserve judicial resources by consolidating common issues of

fact and law, with the result of preserving public confidence in the system by avoiding

inconsistent adjudications. Finally, there is no indication that the Class Members desire to

control their own cases. Defendants do not raise any arguments regarding this second prong of

Rule 23(b), and indeed, do not appear to dispute the fact that a class action would be superior to

individual actions in this case.

As a result, the Court accepts that a class action is the superior method of resolution in

this case.

### c. Class Certification

In light of the foregoing, the Court respectfully recommends that the Court find that

plaintiffs have satisfied the requirements of Rule 23(b)(3). Pursuant to that provision, the Court

recommends that the class members be certified as two classes consisting of: 1) all non-exempt employees who were employed by defendants at any time between May 27, 2009 and May 27, 2015, six years prior to the date of this Court's May 27, 2015 Order, granting plaintiffs' request for conditional collective action certification; and 2) all tipped employees who were employed by defendants at any time between May 27, 2009 and May 27, 2015, six years prior to the date of this Court's May 27, 2015 Order, granting plaintiffs' request for conditional collective action certification. (See Order at 14).

## CONCLUSION

Having considered the parties' submissions, the Court respectfully recommends that plaintiffs' motion for summary judgment be granted in part. In addition, the Court respectfully recommends that plaintiffs not be awarded cumulative liquidated damages under the NYLL and FLSA for overlapping claims. The Court also respectfully recommends that plaintiffs' request for class certification under Rule 23 be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
     August 11, 2016

/s/ CHERYL L. POLLAK    8/11/16

_____

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

54